UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL KRUGER,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant.<br>_____/ | No. C-12-5820 EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket Nos. 10, 13)** |

On February 9, 2009, Plaintiff Dan Kruger protectively filed for disability insurance benefits under Title II of the Social Security Act. Mr. Kruger claimed an inability to work beginning October 20, 1995, based on, *inter alia*, degenerative disc disease of the lumbar spine and Ehlers-Danlos syndrome. *See* AR 212 (disability report). Mr. Kruger has exhausted his administrative remedies with respect to his claim of disability. This Court has jurisdiction for judicial review pursuant to 42 U.S.C. § 405(g). Mr. Kruger has moved for summary judgment or, in the alternative, a remand for additional proceedings. The Commissioner has cross-moved for summary judgment. Having considered the parties' briefs and accompanying submissions, including but not limited to the administrative record, and good cause appearing therefor, the Court hereby **GRANTS** in part and **DENIES** in part Mr. Kruger's motion and **DENIES** the Commissioner's.

### I.    FACTUAL & PROCEDURAL BACKGROUND

On February 9, 2009, Mr. Kruger applied for disability insurance, claiming an inability to work since October 20, 1995, due to, *inter alia*, degenerative disc disease of the lumbar spine and

Ehlers-Danlos syndrome ("EDS").[1] *See* AR 212 (disability report). Mr. Kruger's application was initially denied on April 3, 2009, and upon reconsideration on November 9, 2009. *See* AR 97 (initial disability determination); AR 98 (reconsideration disability determination). Mr. Kruger then sought an administrative hearing before an Administrative Law Judge ("ALJ"). *See* AR 114 (request for ALJ hearing). After holding a hearing, Judge Benmour issued an opinion on January 28, 2011, in which she denied Mr. Kruger's claim for benefits. *See* AR 26-42 (ALJ decision).

Judge Benmour went through the five-step sequential evaluation process for disability required under 20 C.F.R. § 404.1520.

> Step one disqualifies claimants who are engaged in substantial gainful activity from being considered disabled under the regulations. Step two disqualifies those claimants who do not have one or more severe impairments that significantly limit their physical or mental ability to conduct basic work activities. Step three automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix. Benefits are awarded at step three if claimants are disabled. Step four disqualifies those remaining claimants whose impairments do not prevent them from doing past relevant work. Step five disqualifies those claimants whose impairments do not prevent them from doing other work, but at this last step the burden of proof shifts from the claimant to the government. Claimants not disqualified by step five are eligible for benefits.

*Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).

However, before making the step one finding, Judge Benmour noted first that Mr. Kruger's date last insured ("DLI") for purposes of his claim for benefits was December 31, 2000. *See* AR 31 (ALJ decision). Mr. Kruger has not contested this finding as a part of this lawsuit. Thus, for purposes of this opinion, the question is whether Mr. Kruger was disabled between October 20, 1995, and December 31, 2000.

At step one, the ALJ found that Mr. Kruger did not engage in substantial gainful activity during the period from his alleged onset date through his DLI. *See* AR 31 (ALJ decision). At step two, the ALJ found that, through the DLI, Mr. Kruger had the following severe impairments: degenerative disc disease of the lumbar spine and EDS resulting in chronic pain. *See* AR 31. At

---

[1] EDS is a disorder that is characterized by "[d]ebilitating chronic pain out of proportion to objective joint findings." AR 336 (Dr. Blumberg report).

United States District Court
For the Northern District of California

step three, the ALJ concluded that Mr. Kruger did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the relevant appendix. *See* AR 31. At step four, the ALJ found that, through the DLI, Mr. Kruger had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with certain exceptions. *See* AR 32. The ALJ then found that, based on this residual functional capacity, Mr. Kruger was unable to perform any of his past relevant work, including acupuncture. *See* AR 36. At step five, the ALJ concluded that, through the DLI, there were jobs that existed in significant numbers in the national economy that Mr. Kruger could have performed. *See* AR 37. Consequently, the ALJ issued a decision adverse to Mr. Kruger. *See* AR 26-38.

Subsequently, Mr. Kruger sought review of the ALJ decision. *See* AR 25 (request for review of ALJ decision). For review by the Appeals Council, Mr. Kruger supplemented the record with a letter from a treating chiropractor, who is also a friend. *See* AR 521 (Sherman letter); AR 4 (exhibit list attached to notice of Appeals Council action). The Appeals Council denied the request for review on September 11, 2012. *See* AR 1 (notice of Appeals Council action). Mr. Kruger now seeks judicial review through this action.

## II. DISCUSSION

Administrative decisions in Social Security Disability cases are typically reviewed under a "substantial evidence test." *See Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001). That is, a district court

> may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. A court review[s] the administrative record as a whole to determine whether substantial evidence supports the ALJ's decision. . . . [W]here the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed.

*Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal citations omitted).

In the instant case, Mr. Kruger makes two main arguments: (1) that the ALJ's findings regarding his credibility were not adequately substantiated and (2) that the ALJ erred in failing to give appropriate weight to the opinions of Dr. Saal, one of his treating physicians. Both parties have

addressed Mr. Kruger's arguments through the lens of the above legal standard. The Court, however, in evaluating the arguments presented by Mr. Kruger, concludes that it is not appropriate to apply that legal standard here – at least, not yet – because further development of the record was needed before the ALJ and Appeals Council should have rendered a decision as to whether Mr. Kruger was disabled.

Even where a claimant is represented, an "ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation marks omitted). "The duty to develop the record extends to the Appeals Council." *Butler v. Astrue*, No. 11-cv-00452 (WGY), 2013 U.S. Dist. LEXIS 28082, at *29 (N.D.N.Y. Feb. 28, 2013); *see also Sims v. Apfel*, 530 U.S. 103, 111 (2000) (stating that "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits, and the [Appeals] Council's review is similarly broad"). The duty to develop the record is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

Here, the Court finds that that duty was triggered because (1) for the period October 1995 to October 1998 (*i.e.*, from the alleged onset date up to the time that Mr. Kruger sought treatment from Dr. Saal), there was a clear gap in the record, as even the ALJ expressly recognized, *see* AR 33 (ALJ decision) (noting that Mr. Kruger claimed a serious injury as of October 1995 but "the earliest treatment record is from November of 1998, over three years after his injury"), and (2) for the period November 1998 to December 2000 (*i.e.*, from the time that Dr. Saal treated Mr. Kruger to the DLI), there was a critical ambiguity regarding the opinion of Dr. Saal.

A. <u>October 1995 to October 1998</u>

As indicated above, the period from October 1995 to October 1998 covers the time from the alleged onset date up to the date that Mr. Kruger sought treatment from Dr. Saal. This was clearly a critical time because it was right after Mr. Kruger sustained the injury at issue. At the hearing before the ALJ, Mr. Kruger claimed that some of the medical records for this period were not available – *e.g.*, records from a physical therapy clinic and records from his treating physiatrist,

1 Chaz Salzberg. *See* AR 60 (ALJ hearing). According to Mr. Kruger, the clinic "is no longer in
2 existence [and so] doesn't have the record[s]"; as for Dr. Salzberg, he "is no longer in practice" and
3 "[t]he people who've taken over his practice have not kept his records." AR 60-61.

4       The Court does not fault the ALJ for taking these statements by Mr. Kruger at face value –
5 *i.e.*, that the clinic and Dr. Salzberg records were not available. What is problematic is that other
6 medical records might have been available but there is no indication that the ALJ did any follow up
7 as to these records. At the hearing, for example, Mr. Kruger noted that not only did he contact Dr.
8 Salzberg but he also contacted a chiropractor in a clinic.[2] *See* AR 64. Furthermore, Mr. Kruger
9 stated that he contacted an "acupuncturist who was working in my practice." AR 64. Although
10 chiropractors and acupuncturists are not acceptable medical sources under 20 C.F.R. § 404.1513(a),
11 they are still "other" medical sources whose opinions should be considered under § 404.1513(d)(1).
12 *See Sanfilippo v. Astrue*, 274 Fed. Appx. 551, 553 (9th Cir. 2008) (acknowledging that a
13 chiropractor is not an acceptable medical source but adding that an ALJ may consider the opinion of
14 an other medical source such as a chiropractor to determine the severity of an impairment).
15 Furthermore, in the absence of any evidence from an acceptable medical source, it put even more of
16 a premium on the ALJ to develop the record as to the opinions of any other medical source – or for
17 that matter other nonmedical sources who might have firsthand knowledge as to Mr. Kruger's
18 condition. *See* 20 C.F.R. § 404.1513(d)(4) (noting that evidence may be obtained from nonmedical
19 sources such as family, friends, and neighbors in assessing the severity of a claimant's impairment);
20 *cf. Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (noting that then-existing SSR 88-13
21 "states that where a claimant alleges pain or other symptoms that are '*not supported by medical*
22 *evidence in the file*, the adjudicator *shall* obtain detailed descriptions of daily activities by directing
23 ///
24 ///
25 ///

---

[2] Because Mr. Kruger did not identify the chiropractor by name, the Court cannot determine whether the chiropractor was Dr. Sherman, a chiropractor who treated him after the alleged onset date and who ultimately referred him to Dr. Saal.

specific inquiries about the pain and its effects to . . . third parties who would be likely to have such knowledge'") (emphasis in original).³

The ALJ's failure to develop the record was not subsequently cured when Mr. Kruger submitted a letter to the Appeals Council from a chiropractor friend, Dr. Sherman, who treated him shortly after the alleged onset date. *See* AR 521-22 (Dr. Sherman letter). First, it is not clear that Dr. Sherman was the chiropractor that Mr. Kruger mentioned during the hearing before the ALJ. Second, even if he was, the Appeals Council should have solicited Dr. Sherman's records – particularly because Dr. Sherman's letter was somewhat conclusory, *see, e.g.*, AR 521 (stating "conservative care" was provided and "ordered radiological studies [were] inconclusive") – and there is no indication that the Appeals Council did such. *See* 20 C.F.R. § 404.1512(d) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application."); *see also id.* § 404.950(d)(1) ("When it is reasonably necessary for the full presentation of a case, an administrative law judge or a member of the Appeals Council may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses and for the production of books, records, correspondence, papers, or other documents that are material to an issue at the hearing."). Finally, regardless of Dr. Sherman, there was still the unidentified acupuncturist who may have given some treatment to Mr. Kruger as well as the possibility of nonmedical sources who could have opined on Mr. Kruger's condition. Indeed, given the contents of Dr. Sherman's letter – which provided at least some corroboration or substantiation for Mr. Kruger's position – the Appeals Council arguably had even more of an obligation to make an inquiry as to whether there might be additional evidence.

---

³ The Court acknowledges that SSR 88-13 has since been superseded. Nevertheless, in a situation such as this where there was *no* medical evidence of record, the Court concludes that the ALJ's duty to fully and fairly develop the record and to assure that Mr. Kruger's interests were considered required her to conduct some inquiry as to whether there might be nonmedical sources who could provide insight as to his condition during the period October 1995 to October 1998.

B.     November 1998 to December 2000

For the period November 1998 to December 2000, it is clear – both from the parties' briefs as well as the administrative record – that the critical medical evidence of record was that provided by Dr. Saal.[4] The problem is that the evidence provided by Dr. Saal was ambiguous as to a crucial point – namely, whether the limitations referenced in the medical records of the time (*e.g.*, how long Mr. Kruger could sit) were simply limitations reported by Mr. Kruger or rather were limitations that Dr. Saal found. Even a subsequent letter authored by Dr. Saal many years later does not provide sufficient clarity on the matter. *See* AR 511 (Dr. Saal letter). This is an important distinction because, if the limitations were simply limitations claimed by Mr. Kruger, then they would essentially be evaluated under a credibility analysis. *See, e.g.*, *Taylor v. Astrue*, 386 Fed. Appx. 629, 633 (9th Cir. 2010) (stating that "the ALJ could properly reject the reports and opinions of the treating physician and examining psychologist regarding her functional limitations, as they were based primarily on [the claimant's] discredited self-reports"). In contrast, if the limitations were actually limitations found by Dr. Saal, then his opinions could only be rejected – if uncontradicted – for clear and convincing reasons supported by substantial evidence in the record or – if contradicted – for specific and legitimate reasons supported by substantial evidence in the record. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

To the extent the government suggests that the ALJ assumed or actually concluded that those limitations were in fact limitations found by Dr. Saal, it still is not clear that Dr. Saal expressed any opinion as to whether those limitations would persist or whether there would be a continued trend of improvement. For example, in his post-June 2009 letter, Dr. Saal does state that Mr. Kruger "never progressed significantly above this level" – *i.e.*, able to sit for up to two hours a day, AR 511 (Dr. Saal letter), but there is ambiguity as to whether this was an opinion of Dr. Saal or a reported limitation by Mr. Kruger. *See* AR 511 (stating that, "[a]fter the November 1999 epidural, Dr. Kruger reported that he had not experienced any significant improvement to his overall functional status").

---

[4] Of course, any opinions expressed by Dr. Saal as to Mr. Kruger's condition at a later time – *i.e.*, in or about June 2009 – are not relevant.

7

Given the ambiguity with respect to the opinion of Dr. Saal, the ALJ should have contacted Dr. Saal for clarification. *Cf. Smolen*, 80 F.3d at 1288 (stating that, "[i]f the ALJ thought he needed to know the basis of [the doctor's] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them").

To the extent the government suggests that the ALJ assumed or actually concluded that Dr. Saal found that the limitations would persist, then there would a contradiction between Dr. Saal's opinion and the opinion of state agency medical consultant, *see* AR 408 (Dr. Sheehy opinion) (concluding that there was no evidence to support a severe persistent impairment before the DLI), such that the ALJ could reject Dr. Saal's opinion only for specific and legitimate reasons supported by substantial evidence.[5] The ALJ made no such finding below. Here, this assessment could be affected by what is uncovered for the October 1995-October 1998 period, discussed above, and thus the issue should be revisited.

C.   Remand

Because the ALJ and/or Appeals Council failed to adequately develop the record, the Court concludes that a remand is warranted so that the record may be so developed. As a part of the remand, the ALJ may also wish to consider development of the record as to the EDS disorder (*e.g.*, is it in fact a genetic disorder, in which case the fact that Mr. Kruger was not diagnosed with the condition until 2007 does not mean that he did not have the disorder during the relevant period)[6] and the statement that Mr. Kruger appears to have made to Dr. Saal that he had been "working at modified work duty." AR 266 (Dr. Saal medical records).

---

[5] While the government argues that the opinion of a state agency medical consultant can be a specific and legitimate reasons and substantial evidence, that is only where the opinion is "based on independent clinical findings that differ from those of the treating physician." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Tonapetyan*, 242 F.3d at 1149 (stating that "the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record").

[6] Of course, even if EDS is a genetic disorder that Mr. Kruger had during the relevant period, the question is what symptoms Mr. Kruger had during that time. The lack of a formal diagnosis should have no bearing on what symptoms he had at the time.

The Court underscores here that, in ordering a remand, it is not expressing any opinion that Mr. Kruger was in fact disabled during either the October 1995-October 1998 or November 1998-December 2000 timeframe. Indeed, the Court notes that, for the latter period, it shares some of the same concerns as articulated by the ALJ – *e.g.*, why Mr. Kruger did not seek treatment after the second epidural in November 1999.[7] Nevertheless, those concerns are not enough at this point to justify even a limited affirmance of the ALJ's decision (*i.e.*, as to the latter time period) given the need for the development of the factual record.

### III. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Mr. Kruger's motion for relief and denies the Commissioner's. The case is remanded to the ALJ for further development of the factual record.

This order disposes of Docket Nos. 10 and 13.

IT IS SO ORDERED.

Dated: August 29, 2013

_____
EDWARD M. CHEN
United States District Judge

---

[7] Even if the Court accepts Mr. Kruger's claim of financial inability, such a claim does not automatically preclude negative findings regarding credibility, particularly because Mr. Kruger has not indicated that medical care for those with financial difficulties was not available to him. *Cf.* SSR 82-59 (in evaluating the ramifications of an individual's failure to follow prescribed treatment, noting that there are justifiable reasons for not following such treatment, including inability "to afford prescribed treatment . . . *but for which free community resources are unavailable*"; adding that "[a]ll possible resources (e.g., clinics, charitable and public agencies, etc.), must be explored") (emphasis added). As for Mr. Kruger's point that he did seek informal treatment through his doctor-friend (Dr. Buckman), the ALJ correctly noted that treatment did not begin until 2002 – *i.e.*, well beyond the date of the second epidural as well as the date last insured. Moreover, even if the treatment by Dr. Buckman between 2002 and 2005 sheds some light on Mr. Kruger's condition at or about the DLI, the treatment provided does not suggest that Mr. Kruger had any significant limitations. In his letter, Dr. Buckman only asserts that, on "several occasions," he "prescribed and provided [Mr. Kruger] with various sample medications for his back and leg pain." *See id.* Sample medications on "several occasions" from 2002 to 2005 does not lead to an inference of significant limitations.